UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
Case No. _____

STEPHAN SCHURMANN,

    Petitioner,

v.

JUBILIE ANQUI,

    Respondent.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF VERIFIED
PETITION FOR RETURN OF CHILD PURSUANT TO
INTERNATIONAL TREATY AND FEDERAL STATUTE**

Petitioner, STEPHAN SCHURMANN ("Petitioner"), by and through undersigned counsel and pursuant to International Treaty and 42 U.S.C. § 11601 *et seq.*, submits this memorandum of law in support of his Verified Petition for Return of Child Pursuant to International Treaty and Federal Statute and Emergency Petition for Warrant of Arrest in Lieu of Writ of Habeas Corpus.

**I.    PRELIMINARY STATEMENT**

This is a memorandum in support of a verified petition to enforce International Treaty and federal law. This is not a child custody case. Specifically, this Petition is brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the "Convention"), and 42 U.S.C. § 11601 *et seq*, the International Child Abduction Remedies Act ("ICARA"). The purposes of the Convention and ICARA are to secure the safe return of children wrongfully removed or retained outside of their country of habitual residence and to ensure that Contracting States respect each other's sovereignty. Under

the Convention, courts do not have jurisdiction to hear the underlying custody dispute. Thus, courts can determine only *where* a child custody action should be tried. Petitioner seeks the return of his child who is being wrongfully retained in Destin, Florida.

## II.     FACTS

Petitioner and Respondent were married on March 18, 2007 in Costa Rica. D.S.S. was born in Marbella, Spain, in 2008. Petitioner is a German citizen, and is a legal resident of Spain. Respondent is a citizen of the Philippines, and is a legal resident of Spain. D.S.S. has German citizenship, based on the citizenship of his father. Petitioner and Respondent are the biological parents of D.S.S. (hereinafter "the Child[1]") and they lived together as a family unit before and after their move to the United States. The Child is currently 6 years old. Verified Pet. at ¶ 9; *see also* Ex. B to Verified Pet.

From his birth, the habitual place of residence of D.S.S. has been Spain. In 2010, the family came to the United States on a Temporary E-2 Investor Visa. The family continued to maintain the Child's habitual place of residence in Spain, knowing that the move to the United States would be a temporary one. Verified Pet. at ¶ 10; *see also* Ex. C to Verified Pet.

Petitioner, Respondent and the Child agreed in August 2014 to move back to Spain, as their visa had expired. While Petitioner was on a business trip in Pennsylvania attempting to move his business back to Spain, Respondent absconded with the Child and moved in with her boyfriend. She kept the location of the Child a secret from the Petitioner for four months. Verified Pet. at ¶ 11.

In December 2014, when Petitioner returned to Florida, Respondent announced that she would not return to Spain and that she intended Petitioner never see his son again. She moved

---

[1] Pursuant to Rule 5.2(a), the minor's initials are used in lieu of his full name, his name has been redacted from all exhibits, his birthday is referred herein only by the year of his birth, and his birthday has been redacted from all exhibits.

briefly with her boyfriend and the Child to an unknown location in Alabama to prevent Petitioner from seeing the Child. Petitioner was served with divorce papers on December 19, 2014, and then had to return to Spain without his son. Verified Pet. at ¶ 12. 13. He cannot return to the United States for 10 years as he had overstayed his visa. Respondent is currently located in Destin, Florida. Verified Pet. at ¶¶ 13-14.

On April 13, 2015, Petitioner sought assistance from the Ministry of Justice (the "Ministry") in Madrid, Spain. Verified Pet. at ¶ 20; *see also* Ex. D to Verified Pet.

Respondent is physically present in Okaloosa County, Florida. Respondent has threatened Petitioner that she will never return the Child to Spain and that Petitioner will never see his son again. Respondent has also filed papers in the Florida dissolution proceedings seeking to relocate with the Child to Utah. As a result of these threats, Petitioner suspects that Respondent will attempt to flee the district once she is served with process of the Verified Petition if protective orders are not entered. Verified Pet. at ¶ 27.

## III. LEGAL ARGUMENT

### A. Jurisdiction

This Court has jurisdiction pursuant to 42 U.S.C. §11603(a). This Court's jurisdiction, by the express terms of the Convention and ICARA, is limited to (i) determining the legal sufficiency of the Petitioner's wrongful retention claim and (ii) ensuring that the rights of custody and access of and to the Child to which the Petitioner is entitled under the laws of Spain are respected in the United States. *See* Convention, Articles 1 and 16; *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) ("A court considering an ICARA petition has jurisdiction to decide the merits only of the wrongful removal claim, not of any underlying custody dispute.").

If the Petitioner states a legally sufficient wrongful removal and/or retention claim, the Court must order the return of the wrongfully removed and retained child to the country of the child's habitual residence, as that country is the proper jurisdiction to determine child custody issues. *Leslie v. Noble*, 377 F. Supp. 2d 1232, 1238 (S.D. Fla. 2005) ("The Convention's underlying premise is that the child's country of habitual residence is the proper forum with jurisdiction to issue custody orders. Hence, a court considering an ICARA petition may only address a wrongful removal or retention, but not a custody dispute.") (citations omitted).

Petitioner has established a *prima facie* wrongful retention claim under the Convention and ICARA. This Court, therefore, should order the return of the Child to Spain so that the proper tribunal can determine child custody rights and/or the merits of any child custody disputes.

### B. Purpose of the Convention and ICARA

The United States became a signatory to the Convention in 1981, and Congress enacted the ICARA to implement the Convention. 42 U.S.C. § 11601(b). The Convention expressly

states that its dual objectives are to (a) secure the prompt return of children wrongfully removed or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, Art. 1. "The Convention is designed to restore the pre-abduction status quo and to deter parents from crossing international borders in search of a more sympathetic forum." *Furnes v. Reeves*, 362 F.3d 702, 710 (11th Cir. 2004).

A removal or retention is wrongful when it is in breach of rights of custody attributed to a person under the law of the State in which the children were habitually residents immediately before the removal or retention, and, at the time of the removal or retention those custody rights were actually exercised or would have been exercised but for the removal or retention. Convention, Art. 3. A petitioner must prove by a preponderance of the evidence that the removal or retention was wrongful within the meaning of the Convention. 42 U.S.C. § 11603(e)(1)(A). Upon a finding of wrongful retention, the court "shall order the return of the child forthwith" unless the Respondent pleads affirmatively and proves one of the four affirmative defenses listed in the Convention. Convention, Arts. 12, 13.

    1.    *Rights of Custody*

The Convention applies to "any child who was a habitual resident in a Contracting State immediately before any breach of custody or access rights." Convention, Art. 4. "[C]ourts have defined habitual residence as 'the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a degree of settled purpose from the child's perspective.'" *In Re Ahumada*, 323 F. Supp. 2d 1303, 1310 (S.D. Fla. 2004) (quoting *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995) (internal quotations omitted). Notably, a

habitual residence does not include the place to where the child has been wrongfully removed or retained. *In Re Ahumada*, 323 F. Supp. 2d at 1311–12.

    2.    *Return of the Child*

Once a petitioner has established a *prima facie* case under the Convention and ICARA, the court must order the return of the child to the child's place of habitual residence, unless (1) more than one year has elapsed since the wrongful retention of the child and the date of the commencement of proceedings, *and* the child has become settled; (2) the petitioner was not actually exercising custody rights at the time of the removal or retention, or consented to or subsequently acquiesced in the removal of the retention; (3) there is grave risk that the return of the child would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation; or (4) if the court finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of the child's views. Convention, Arts. 12, 13.

    **C.**    **Petition Process and Prima Facie Case**

Each member country ("Contracting State") of the Convention designates a Central Authority, which carries out the duties of the Convention. Central Authorities among the Contracting States cooperate with each other to secure the prompt return of children and to discover the whereabouts of children who have been wrongfully removed or retained. Convention, Art. 7. The Convention provides that "[a]ny person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child." Convention, Art. 8. An application made to the Central Authority must contain the following:

    a.    information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

    b.    where available, the date of birth of the child;

    c.    the grounds on which the applicant's claim for return of the child is based;

    d.    all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

Convention, Art. 8

Under the Convention and ICARA, a petitioner states a *prima facie* claim where he demonstrates by a preponderance of the evidence that: (1) the habitual residence of the child immediately before the date of the alleged wrongful removal or retention was in a foreign country; (2) the removal or retention is in breach of his custody rights under the foreign country's law; and (3) the petitioner was exercising his custody rights at the time of the alleged wrongful removal or retention. *In Re Ahumada*, 323 F. Supp. 2d at 1310, *citing Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1340 (S.D. Fla. 2002).

Article 11 of the Convention requires the court to "act expeditiously in the proceedings for the return of children." Thus, a court may treat a petition under the Convention as an application for a writ of habeas corpus, review the petition to determine whether the petitioner is entitled to relief, and order the respondent to appear for an immediate hearing to show cause why the retained or removed child should not be returned to his/her place of habitual residence. *Zajaczkowski v. Zajaczkowski*, 932 F. Supp. 128, 130 (D. Md. 1996). If a decision has not been made within six (6) weeks of filing, the petitioner or the United States Central Authority has the right to request a statement from the court regarding the reason for the delay. Convention, Arts. 11, 12.

Further, pursuant to 42 U.S.C. § 11063(c), upon the filing of a petition, the respondent is entitled to notice of the action "given in accordance with the applicable law governing notice in interstate child custody proceedings." In the United States, the relevant federal law is the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738, and the Uniform Child Custody Jurisdiction Act ("UCCJA"). *Brooke v. Williams*, 907 F. Supp. 57, 60 (S.D. NY. 1995). Both the PKPA and UCCJA require that reasonable notice and an opportunity to be heard be provided to the respondent. Personal service meets this requirement. *Id.*

## IV.   PETITIONER'S PRIMA FACIE CASE FOR WRONGFUL RETENTION

### A.   Spain is the Country of the Child's Habitual Residence

Spain is the Child's state of habitual residence. The Child was born in Spain and it was the shared intention of the parents that the Child return to Spain after their investor visa to the United States expired. The only reason that the Child is not in Spain today is because Respondent wrongfully, fraudulently, and unilaterally retained the Child in the United States. The Child's long-time presence in Spain prior to his wrongful retention is sufficient time for him to be completely acclimatized and to achieve a degree of settled purpose. *See In Re Ahumada*, 323 F. Supp. 3d at 1310.

Florida is not the Child's place of habitual residence as habitual residence does not include the place to where a child is wrongfully retained. *In Re Ahumada*, 323 F. Supp. 3d at 1311–12. As in *Ahumada*, the Child was raised in a country other than the United States. In December 2014, Respondent unilaterally retained the Child in the United States. Petitioner never consented to the Child moving to or remaining in the United States. Respondent's unilateral decision to retain the Child in Florida, her limitation of communication(s) between the Petitioner and the Child, and her failure to voluntarily return to Spain do not change the Child's

state of habitual residence.  Rather, the Respondent's unilateral actions actually support a final determination that Florida is not the Child's state of habitual residence.

### B. Petitioner Has a Right to Custody and Access of the Child

Pursuant to the civil law of Spain, Petitioner has a right of custody and access to the Child.  *See* Verified Petition.  At all times prior to the Child's wrongful retention, Petitioner continually exercised his rights to custody over the Child.  *See Friedrich v. Friedrich*, 78 F.3d 1060, 1065-66 (6th Cir. 1996) ("[I]f a person has valid custody rights to a child under the law of the child's habitual residence, that person cannot fail to 'exercise' those rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child.").  The Child lived with the Petitioner until the Respondent unilaterally and wrongfully retained the Child.  Petitioner has taken all legal steps available to him to secure the return of the Child to Spain since the time Respondent wrongfully retained the Child.

The Child should be returned to Spain under the custody of the Petitioner.  In wrongfully retaining the Child, Respondent violated Petitioner's right to custody and access over the Child.  "[T]he violation of a single custody right suffices to make removal or retention wrongful." *Ahumada*, 323 F. Supp. 2d at 1311.  Here, Respondent violated Petitioner's custody and access rights, which Petitioner continuously exercised.  Petitioner has satisfied his burden to show that a wrongful removal and retention occurred.  Accordingly, the Child must be returned to Spain unless Respondent can establish any of the Convention's affirmative defenses, which she cannot.

As set forth from the facts above, there are no affirmative defenses available to Respondent in this case.  Petitioner has timely filed his Hague Petition in that the Child has been wrongfully retained in Florida for less than six months.  In addition, as set forth above, Petitioner did not consent to the retention.  Further, as set forth in the Verified Petition, Petitioner was

exercising his custody rights at the time of the wrongful retention. Moreover, there is no grave risk to the Child in returning him to Spain. Finally, there can be no mature child objection, as the Child is only six (6) years old.

## V.   CONCLUSION

Spain is the country of the Child's habitual residence. Petitioner has a right of custody and rights of access to the Child within the meaning of the Convention. Moreover, Petitioner has at all times exercised his rights of custody and access over the Child and diligently sought the Child's return since the time Respondent wrongfully retained the Child. Based on the foregoing, Petitioner has established a *prima facie* case of wrongful retention under the Convention and ICARA. Accordingly, Petitioner respectfully requests that this Court enter an order to the following effect:

a. Schedule an *ex-parte* conference with counsel for the Petitioner as soon as possible in order to discuss scheduling in light of the fact Petitioner resides in Spain and cannot travel to Florida. Petitioner desires to testify telephonically at both the requested *ex-parte* hearing on his Request for TRO and at the later final evidentiary hearing on his Petition;

b. Following the requested *ex-parte* scheduling conference, set an evidentiary *ex-parte* hearing on Petitioner's Request for TRO pending the Court's final order on his Petition;

c. Upon a finding at the *ex parte* hearing that Petitioner has made a *prima facie* case for return and that Respondent presents a flight risk if given advanced notice of these proceedings, issue a warrant directing the U.S. Marshal Service or other law enforcement authority to serve Respondent with notice of these proceedings;

d. Issue an order requiring Respondent to (1) remain within the jurisdiction of this Court pending resolution of this matter and (2) surrender each of her and the Child's passports, visas and other travel documentation to the Court and show cause as to why the Child should not be returned to Spain;

e. Set a final hearing on Petitioner's Petition for Return;

f. Following the final evidentiary hearing, ordering that the Child be returned forthwith to Spain in the company of a temporary guardian, to be determined by the Court;

    g. Directing Respondent to pay Petitioner's necessary expenses, including legal cost and fees; and

    h. Directing such other and further relief as justice and its cause may require.

Dated: May 18, 2015

                            Respectfully submitted,

                            */s/ Daniel E. Nordby*
                            **Daniel E. Nordby, Esq.**
                            Florida Bar No. 14588
                            *dnordby@shutts.com*
                            **Maxine M. Long, Esq.**
                            Fla Bar No. 286842
                            *mlong@shutts.com*
                            **Rachel H. LeBlanc, Esq.**
                            Florida Bar No. 0021815
                            *rleblanc@shutts.com*
                            **Lauren K. Fernandez, Esq.**
                            Florida Bar No. 58570
                            *lfernandez@shutts.com*
                            **SHUTTS & BOWEN LLP**
                            *Attorneys for Petitioner*
                            215 S Monroe St Ste 804
                            Tallahassee, FL 32301-1858
                            Telephone: (850)521-0600

MIADOCS 10924578 1